UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SON HOANG HUYNH,<br><br>    Plaintiff(s),<br><br> v.<br><br>PAMELA BONDI, et al.,<br><br>    Defendant(s). | CASE NO. C25-2371-KKE<br><br>ORDER GRANTING HABEAS PETITION |

  Petitioner Son Hoang Huynh is a citizen and national of Vietnam detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Immigration and Customs Enforcement ("ICE") detained him on June 17, 2025 after his release from California state criminal custody due to "increased cooperation between Vietnam and the United States in repatriating Vietnamese citizens." Dkt. No. 9 at 11. Huynh now seeks relief from this Court to obtain his release from immigration detention, an order requiring a hearing should the Government re-detain him, an order preventing removal to a third country without notice and due process, and an order barring removal to an unknown third country. Dkt. No. 1. For the reasons stated below, the Court will grant Huynh's habeas petition in part.

ORDER GRANTING HABEAS PETITION - 1

## I. BACKGROUND

**A.   Vietnamese Refugee Removal**

Vietnam has long refused to repatriate Vietnamese nationals who came to the United States as refugees prior to 1995.  Dkt. No. 1 at 5; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 714 (W.D. Wash. 2025).  Tin Thanh Nguyen, an immigration attorney who specializes in cases involving Vietnamese citizens and nationals, attests that "[b]ecause of Vietnam's refusal to issue travel documents, many Vietnamese nationals who came to the United States as refugees before 1995 and were ordered removed years ago, have continued to live and work in the United States and have regularly checked in with ICE in accordance with their [Order of Supervision] conditions."  Dkt. No. 13-2 ¶ 7.[1]  In 2020, the United States and Vietnam signed a Memorandum of Understanding ("MOU"), which established criteria for the repatriation of pre-1995 immigrants subject to an order of removal.  Dkt. No. 13 at 5 (citing *Nguyen*, 796 F. Supp. at 714).  However, the criteria are not fully available to the public, and Respondents have not supplied the Court with that information in this case.  *Id.*; *see also Nguyen*, 796 F. Supp. at 714–15.

Despite the MOU, evidence submitted by Petitioner suggests that the repatriation of pre-1995 immigrants remains uncertain.  In a declaration originally filed in another recent case, and offered by Petitioner here, Assistant Federal Public Defender Katie Hurrelbrink asserted that of at least sixteen pre-1995 Vietnamese clients who have been detained by ICE, "[n]one have yet been removed to Vietnam."  Dkt. No. 13-1 ¶ 4 (originally filed in *Nguyen v. Bondi*, CV25-1833-JNW).  She explained that "[m]any of these clients have been in detention for months without receiving a travel document," including one who has been detained for six-and-a-half months.  *Id.* ¶ 5.  In Hurrelbrink's experience, "ICE often detains pre-1995 Vietnamese immigrants for months without

---

[1] Nguyen's declaration was originally filed in *Nguyen v. Scott*, 796 F. Supp. 703 (W.D. Wash. 2025) and is offered by Petitioner here.

ORDER GRANTING HABEAS PETITION - 2

taking the steps necessary for removal." *Id.* ¶ 6. On top of delays in processing by ICE, Hurrelbrink has "never seen Vietnam respond to a travel document request within 30 days." *Id.* ¶ 7. To Hurrelbrink's knowledge, only one of her office's pre-1995 Vietnamese clients has received travel documents to date—in that case, ICE submitted his travel document request in August, and he did not receive notice of Vietnam's issuance of the document until October 23, 2025. *Id.* ¶ 8.

### B.     Petitioner Huynh

Petitioner Huynh is a Vietnamese citizen and national. Dkt. No. 11-1 at 2. In 1992, when he was 16 years old, he fled Vietnam as a refugee and came to the United States, where he became a lawful permanent resident. Dkt. No. 1 at 6. On December 28, 2001, a notice to appear in removal proceedings was issued to Huynh, which cited a February 8, 2000 conviction in Santa Clara County Superior Court "for the offense of Grand Theft (Felony)." Dkt. No. 11-1 at 3. On January 31, 2002, an Immigration Judge ordered Huynh removed to Vietnam based "on the charge(s) contained in the Notice to Appear." Dkt. No. 11-3 at 2.

Huynh was subsequently released pursuant to an Order of Supervision ("OSUP"), though the record is unclear as to when he was released. Respondents assert that Huynh's initial period of detention took place between January 31, 2002 and March 8, 2002, providing both Huynh's Order of Removal (Dkt. No. 11-3) and Huynh's Order of Supervision (Dkt. No. 11-4). Dkt. No. 9 at 5. While Respondents claim that Huynh was released pursuant to an OSUP on March 8, 2002 (Dkt. No. 9 at 5, Dkt. No. 10 ¶ 7), they fail to provide an OSUP—or any documentation—bearing that date. Instead, the OSUP Respondents provided is dated March 27, 2007. Nowhere in their filings or supporting declarations do Respondents address the March 27, 2007 OSUP. As Huynh points out, "the Government does not explicitly confirm his prior detention," though "it appears that he was in ICE custody from at least January 31 to March 8, 2002." Dkt. No. 13 at 1.

ORDER GRANTING HABEAS PETITION - 3

On June 17, 2025, ICE detained Huynh in Fresno, California following his release from state criminal custody for "Crime of Violence" and "Theft or Burglary" charges. *See* Dkt. No. 11-2 at 2–3. Thus, despite Respondents' failure to account for the exact length of Huynh's initial detention, to date, Huynh has been detained for over six months.

On November 24, 2025, Huynh filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his immigration detention as violating the INA, the Due Process Clause, the Administrative Procedure Act ("APA"), and other legal protections. Huynh asserts four grounds for relief: (1) that his re-detention violates the Due Process Clause because there is no significant likelihood he will be removed in the reasonably foreseeable future; (2) that ICE violated due process by revoking his supervised release without a hearing; (3) that Respondents failed to comply with 8 C.F.R. § 241.13; (4) that Respondents' third-country removal policy violates the Due Process Clause, the Convention Against Torture ("CAT"), federal regulations, and the APA; and (5) that Respondents' third-country removal policy is punitive and violates both the Fifth and Eighth Amendments.

## II. DISCUSSION

### A. Legal Standard

#### 1. Habeas petition

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

2. <u>Detention of noncitizens who are ordered removed</u>

Detention of noncitizens following an order of removal is governed by the INA. "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**B.      Huynh's Prolonged Detention is Unlawful.**

    1.  <u>Huynh Provides Good Reason to Believe that There Is No Significant Likelihood of Removal in the Reasonably Foreseeable Future.</u>

Huynh is a noncitizen and Vietnamese national who has lived in the United States for 33 years. He is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for over six months, Huynh's detention is not "presumptively reasonable." *Id.* at 701. Through his petition and reply, Huynh has provided evidence showing that Vietnam repatriates few pre-1995 immigrants (Dkt. No. 13-1 at 3–4, Dkt. No. 13-2 at 3–6), that Vietnam generally does not issue travel documents to pre-1995 immigrants within 30 days and is unlikely to do so in the future (Dkt. No. 13-1 at 3–4, Dkt. No. 13-2 at 4), and that the United States government has failed to effectuate his removal for over 23 years (Dkt. No. 1 at 2). Further, the record shows that, since his re-detention on June 17, 2025, ICE has not yet submitted a request for a travel document to the Vietnamese government for review. Dkt. No. 10 ¶¶ 11–13 (travel document "being reviewed at the HQ level."). Huynh has also shown that, as part of its travel document review, the Vietnamese government conducts interviews and site-visits with an individual's relatives in Vietnam to verify their identity, and considers "whether the individual has any family remaining in Vietnam, whether their Vietnamese identity can be verified, their criminal records, and the manner in which they left Vietnam and came to the United States, among many

other factors." Dkt. No. 13 at 5 (citing *Nguyen*, 796 F. Supp. at 726); Dkt. No. 13-2 at 5. Huynh's lack of a passport, Vietnamese birth certificate, proof of nationality, or family or connections in Vietnam could further delay issuance of a travel document. *See id.*; *see also* Dkt. No. 1 at 22.

Accordingly, Huynh "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

    2.  <u>Respondents Fail to Rebut Huynh's Showing</u>

Respondents generally maintain that "there is a significant likelihood of Petitioner's removal to Vietnam in the reasonably foreseeable future" "because the government of Vietnam has agreed to issue travel documents within 30 days of a request being made." Dkt. No. 9 at 8–11. In support of their contention, Respondents submit the declaration of an ICE deportation officer, Officer Jiarong Du. *See* Dkt. No. 10. As an initial matter, for declarations executed within the United States, 28 U.S.C. § 1746(2) requires a perjury statement "in substantially" the following form: "I declare under penalty of perjury that the foregoing is true and correct." *See CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999). Courts have explained that "two statements … are essential to a proper verification under § 1746: (i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of perjury." *United States v. 8 Gilcrease Lane, Quincy Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008) (citing *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.1988)); *see also Capstone Turbine Corp. v. Malkamaki*, 212CV09274SVWMAN, 2014 WL 12558004, at *4 (C.D. Cal. July 10, 2014). Although Officer Du cites the statute, his declaration includes neither of the above "essential" statements. Instead he provides only that:

> I am familiar with the case of SON HOANG HUYNH ("Petitioner"). I make this declaration based upon my personal and professional knowledge, obtained from various records and systems maintained by ICE in the regular course of business,

ORDER GRANTING HABEAS PETITION - 7

> including but not limited to the alien registration file, DHS databases, and notes from the previous and current officers in charge of the case relating to Petitioner. I provide this declaration on the best of my knowledge, information, belief, and reasonable inquiry in the above-captioned case.

Dkt. No. 10 at 1–2. Of note, Officer Du's statement does not affirmatively assert that his statements are true—instead, he asserts that his statements are based on information he received from other ICE systems and officers. Nor does he aver that he made his declaration under penalty of perjury. And, as discussed herein, the records maintained by ICE contain inconsistent information as to the terms of Huynh's OSUP and the timeline of his initial period of detention following issuance of the removal order. Accordingly, the Court is disinclined to credit Officer Du's contentions.

Even if the Court took his declaration as true, Officer Du suggests additional steps are required before documents are transmitted to the Vietnamese government. *See* Dkt. No. 10. Officer Du asserts that on November 4, 2025, the travel document request was submitted to Headquarters Removal and International Operations ("RIO"), and that as of November 18, 2025 the request was still being reviewed at that level. *Id.* ¶¶ 12–13. Once Headquarters RIO completes its review, Officer Du suggests that an additional level of review by the ERO Attaché in Vietnam is required. *Id.* ¶ 14. Officer Du's declaration, which is dated December 8, 2025, provided no further updates on review of Huynh's travel document request. Respondents provide no guidance as to how long the remaining process will take before ICE submits a request for a travel document to the Vietnamese government, but note that once Vietnam receives the request, it generally responds "within 30 days," and that the Vietnamese government "has agreed to … issue travel documents within 30 days." Dkt. No. 10 ¶¶ 14, 16. Notably, Respondents do not specify whether the 30-day timeline pertains to pre-1995 Vietnamese immigrants such as Huynh, despite Huynh providing evidence of "various challenges inherent in getting Vietnam to issue travel documents

ORDER GRANTING HABEAS PETITION - 8

for pre-1995 arrivals to the United States." Dkt. No. 13-2 ¶¶ 10–12 (Nguyen declaration stating "it can take many months to get any answer from Vietnam about whether it will issue a travel document" for pre-1995 immigrants). Moreover, Respondents ignore evidence in the record establishing that the process for issuing travel documents to pre-1995 immigrants "is highly dependent on the individualized facts of each case, including whether the individual has any family remaining in Vietnam, whether their Vietnamese identity can be verified, their criminal records, and the manner in which they left Vietnam … among many other factors." *Id.* ¶ 8.

Respondents also assert that because "at least 569 final order Vietnamese citizens" have been issued travel documents "in fiscal year 2025 as of September 11, 2025," "Petitioner's removal will likely occur in the reasonably foreseeable future." Dkt. No. 9 at 9 (citing Dkt. No. 10 ¶ 17). But Respondents fail to indicate whether any of those travel documents were issued to pre-1995 immigrants such as Huynh, what proportion of total travel document requests those 569 issued documents represent, or how long it took Vietnam to issue those travel documents. *See Nguyen*, 796 F. Supp. at 726 ("[Declarant] does not clarify whether travel documents *issued* in FY2025 were also *requested* in FY2025, or if they include requests made in previous fiscal years."). As in *Nguyen*, here, Respondents' data "fail[s] to rebut the evidence presented by petitioner that his individual circumstances make removal unlikely." *Id.* (citing *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, *4 (D. Mass. June 20, 2025) (requiring an individualized analysis)). Respondents do not provide the Court with the eligibility criteria Vietnam uses in determining whether to issue a travel document to a pre-1995 immigrant. They also fail to analyze or otherwise state any factual basis to support their belief that Vietnam will issue a travel document to Huynh within 30 days of receipt of the request for travel documents. Respondents do not address, for example, whether Huynh's lack of any family in Vietnam, the year that he left Vietnam, lack of a Vietnamese birth certificate or his criminal conviction in the United States will affect the issuance

ORDER GRANTING HABEAS PETITION - 9

of travel documents to him. *See* Dkt. No. 13-2 ¶ 8 (non-exhaustive list of factors Vietnam considers in issuing travel documents).

Finally, Respondents contend, without citing any authority, that Huynh's criminal history supports his detention. Dkt. No. 9 at 9. In the immigration detention context, "preventative detention based on dangerousness" is permitted "only when limited to specially dangerous individuals and subject to strong procedural protections." *Zadvydas*, 533 U.S. at 690. Respondents have made no showing that Huynh is a "specially dangerous" individual or that he received the requisite "strong procedural protections." Accordingly, the Court rejects Respondents' argument that Huynh's criminal history "independently support[s] the timing of Petitioner's arrest." Dkt. No. 9 at 9; *see Nguyen v. Bondi*, 2:25-CV-02024-TL, 2025 WL 3534168, at *5 (W.D. Wash. Dec. 10, 2025) (criminal history does not bear on *Zadvydas* indefinite detention analysis, as "Petitioner has paid his debt to society for his prior crimes through his prisoner sentences.").

Moreover, the evidence submitted by Respondents as to Huynh's criminal history is questionable. Respondents provide two main sources of Huynh's criminal history: the I-213 form, completed by a deportation officer upon Huynh's re-arrest on June 17, 2025, and Officer Du's unsworn declaration. The immigration and criminal history provided in Huynh's Form I-213 seems to be at odds with Huynh's OSUP. First, while Huynh's Form I-213 states that Huynh was to "report to the San Francisco ERO office on … 03/27/2007" under the terms of his OSUP (Dkt. No. 11-2 at 4), the OSUP itself suggests Huynh was released from detention on that date (Dkt. No. 11-4). In addition, while the OSUP provides a check-in date of April 25, 2007, the I-213 does not, instead providing "08/03/2002, 09/22/2004, 02/24/2005, and 03/27/2007" as check-in dates. Dkt. No. 11-2 at 4. In another apparent discrepancy, though Respondents claim Huynh was released from ICE custody on March 8, 2002, the I-213 lists as part of Huynh's criminal history: "03/07/2002 PC 666, Petty theft with priors, 3 days." Dkt. No. 11-2 at 4. While the I-213 does

ORDER GRANTING HABEAS PETITION - 10

not specify whether the criminal history cites dates of arrests, charges, or convictions, without more, it is nevertheless unclear to the Court how Huynh could have picked up an additional arrest, charge, or conviction for theft while he was in ICE custody. Such discrepancies engender doubt as to the facts asserted in the I-213, including Huynh's criminal history.

Despite Respondents' contentions, Huynh has now been detained for over six months, ICE has not yet submitted a request for travel documents to Vietnam, and Vietnam has not issued the travel documents necessary to effectuate his removal. "ICE is not permitted to hold [Huynh] indefinitely while it waits for travel documents from Vietnam." *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025). The Court will therefore grant Huynh's habeas petition and order his immediate release, subject to the conditions of his prior OSUP.

C.    **Huynh's Requests for Injunctive Relief**

Huynh also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event the Government attempts to remove him to a country other than Vietnam, or in the event that the Government re-detains him. Dkt. No. 1 at 12–21. Specifically, he requests an order enjoining Respondents from removing him to a third country without notice and a meaningful opportunity to respond, or from re-detaining him without first holding a hearing before a neutral decisionmaker. *Id.* at 26. Because he invoked the Court's habeas and federal question jurisdiction, the Court could provide equitable relief if Huynh met the standard for a permanent injunction. *See* Dkt. No. 1 at 4–5; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Indeed, this Court and many others have ruled that Respondents' third-country removal policy does not comport with due process and have ordered similar relief. *See e.g.*, *Kumar v. Wamsley*, C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025); *Baltodano v. Bondi*, C25-1958RSL, 2025 WL 3484769 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Bondi*, 2:25-CV-02024-TL,

2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *A.A.M. v. Andrews*, 1:25-CV-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025).

Here, Respondents argue Huynh's third-country removal claim is speculative and premature, as ICE seeks only to remove Huynh to Vietnam, and there is no evidence that Huynh faces an individual threat of third-country removal. Dkt. No. 9 at 6–7. The Court agrees with Respondents that, on this record, Huynh has not demonstrated a likelihood of irreparable injury that would entitle him to permanent injunctive relief. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (discussing standard for permanent injunctive relief); *cf. Kumar*, 2025 WL 3204724, at *9 (enjoining third-country removal where petitioner was issued a notice that ICE intended to remove him to a third country); *cf. Aden v. Nielsen*, 409 F. Supp. 3d 998, 1001 (W.D. Wash. 2019) (considering due process claim after ICE began seeking travel documents for third-country removal); *Nguyen*, 796 F. Supp. at 736–37 (discussing evidence and argument supporting claimed threat of third-country removal). Accordingly, the Court denies Huynh's request for an injunction preventing third-country removal at this time.

With respect to re-detention, Respondents must comply with 8 C.F.R. § 241.13(i) in the event they seek to re-detain Huynh in the future.

### III.  CONCLUSION

The Court GRANTS Huynh's petition for writ of habeas corpus (Dkt. No. 1).

1. Respondents are ORDERED to immediately release Huynh from custody under the conditions of his most recent order of supervision and not to re-detain him without compliance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231.

2. Within **TWENTY-FOUR (24)** hours of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody.

Dated this 23rd day of December, 2025.

*Kymberly K. Evanson*
───────────────────────
Kymberly K. Evanson
United States District Judge

ORDER GRANTING HABEAS PETITION - 13